IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**ANTERO RESOURCES CORPORATION**

    **Plaintiff,**

v.

**SOUTH JERSEY RESOURCES GROUP LLC AND SOUTH JERSEY GAS COMPANY**

    **Defendants.**

CIVIL ACTION NO. _____

## COMPLAINT

Plaintiff Antero Resources Corporation ("Antero") makes its Complaint against South Jersey Resources Group LLC ("SJRG") and South Jersey Gas Company ("SJG") (collectively, the "SJ Defendants") as follows:

### I.  PARTIES

1. Plaintiff Antero is a corporation organized under the laws of the State of Delaware with its principal place of business in Denver, Colorado. Antero is engaged in the exploration, development, and production of oil and gas.

2. Defendant SJRG is a Delaware limited liability company with its principal place of business at 1 South Jersey Plaza, Folsom, New Jersey. The sole member of SJRG is another limited liability company, South Jersey Energy Solutions, LLC. The sole member of South Jersey Energy Solutions, LLC is South Jersey Industries, Inc., a

corporation organized under the laws of the State of New Jersey, with its principal place of business at 1 South Jersey Plaza, Folsom, New Jersey. SJRG is primarily engaged in the business of trading natural gas.

3. Defendant SJG is a corporation organized under the laws of the State of New Jersey with its principal place of business at 1 South Jersey Plaza, Folsom, New Jersey. SJG is a natural gas utility that serves various counties in New Jersey. SJG is a corporate affiliate of SJRG.

## II. JURISDICTION

4. Plaintiff Antero and the SJ Defendants are citizens of different states. Antero, a citizen of Delaware and Colorado for jurisdictional purposes, has sued SJRG and SJG, both citizens of New Jersey for jurisdictional purposes.

5. The amount in controversy exceeds $75,000.00, excluding interests and costs, because the amount that the SJ Defendants have failed to pay Antero under the parties' applicable contracts far exceeds $75,000. To date, the SJ Defendants have improperly withheld millions of dollars of payments to Antero.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists and the amount in controversy in this case exceeds $75,000.00, excluding interests and costs.

7. The Court has personal jurisdiction over the SJ Defendants, including specific jurisdiction. The SJ Defendants initiated contact with Antero employees located in Denver, Colorado. Following this contact, the SJ Defendants negotiated and entered into long term gas supply contracts with Antero. During the contract negotiations,

representatives of the SJ Defendants traveled to Denver, Colorado to meet with Antero representatives. Under parties' contracts, the SJ Defendants agreed to perform a significant portion of their contractual obligations in Colorado, including paying Antero in Colorado the invoiced amounts for the purchase of natural gas. Based on the SJ Defendants' breach of these contracts, Antero has been injured in Colorado.

### III.  VENUE

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV.  NATURE OF ACTION

9.      This case concerns the SJ Defendants' continuing breaches of two gas supply contracts by failing to pay the contract price for gas purchased from Antero. This failure to pay the contract price has been found to be a breach of the parties' contracts in a prior action between these same parties on the same contracts styled *Antero Resources Corporation v. South Jersey Resources Group, LLC,* and *South Jersey Gas Company*, Civil Action No. 15-CV-00656 (The Hon. R. Blackburn presiding) (the "First Lawsuit").

10.     In 2011, the SJ Defendants entered two long-term contracts for the purchase of natural gas with Antero. Under the contracts, the price of natural gas is based on a natural gas price index—Platts' Inside FERC Columbia Appalachia or Gas Daily Columbia Appalachia (collectively, the "Columbia Appalachia index"). After three years, the SJ Defendants improperly demanded renegotiation of the price term and began to short pay Antero based on a different price index unilaterally selected by them without contractual basis.

11.     In March 2015, Antero brought the First Lawsuit against the SJ Defendants, alleging that the SJ Defendants' failure to pay Antero's invoices based on the Columbia Appalachia index was a breach of contract.  After a week-long trial in May 2017, the jury rendered a unanimous verdict in favor of Antero, finding that the contract price must be determined using the Columbia Appalachia index, and awarding Antero the full amount unjustifiably withheld by the SJ Defendants through March 2017, plus interest.  This Court entered a Final Judgment on that verdict on July 21, 2017.

12.     This Final Judgment resolved that the SJ Defendants must pay for gas based on the Columbia Appalachia index after the SJ Defendants had a full and fair opportunity to litigate the issue.  But the SJ Defendants continue to breach the contracts by short paying invoices calculated using the Columbia Appalachia index and, instead, recalculating a lower price using the same unilaterally selected index improperly used by the SJ Defendants prior to the First Lawsuit. There is no justification for the SJ Defendants to ignore the Final Judgment in the First Lawsuit and to fail to pay for gas using the Columbia Appalachia index specified in the Contracts.  Antero is damaged every month the SJ Defendants fail to pay the full contract amount due to Antero.

## V.     BACKGROUND FACTS

**A.     The Parties Enter Into Long Term Gas Purchase Agreements.**

13.     Beginning in 2010, representatives from Antero and SJRG discussed and negotiated a contract for the long-term purchase of natural gas produced by Antero from the Marcellus Shale in West Virginia. Tim Hale from SJRG initiated discussions with Antero because SJRG had a strong interest in Antero's Marcellus production due to gas

transportation and storage that SJRG had arranged in the area. Representatives of the SJ Defendants, including Ken DePriest and Tim Hale, traveled from their Texas offices to Denver, Colorado to meet with Antero representatives.

14. Effective October 1, 2010, Antero and SJRG entered into a NAESB Base Contract for the Sale and Purchase of Natural Gas (the "SJRG NAESB Base Contract"). The NAESB Base Contract is a standard form contract generated by the North American Energy Standards Board ("NAESB") for the sale and purchase of natural gas that often forms the basis of a contract once coupled with a "Transaction Confirmation." Parties routinely enter into NAESB Base Contracts to facilitate future contracts for the sale and purchase of natural gas with specific quantities, prices and terms.

15. In early 2011, based on the NAESB Base Contract, Antero and SJRG negotiated a long-term agreement for the sale and purchase of natural gas from Antero's wells connected to the Columbia Gas Transmission Line ("TCO Line") in West Virginia.

16. While it was originally contemplated that SJRG would be the sole buyer, SJRG allocated certain volumes of the gas that Antero was willing to sell to its corporate affiliate, SJG, because SJG had additional capacity available through transportation it had arranged on the TCO Line. SJRG acted as SJG's agent to negotiate the sale and purchase of natural gas, and SJG accepted the same terms that had been agreed upon between SJRG and Antero.

17. SJG entered into a NAESB Base Contract with Antero dated June 10, 2011 (the "SJG NAESB Base Contract").

18. In July 2011, Antero and the SJ Defendants executed essentially identical Transaction Confirmations for the purchase of natural gas on the TCO Line, both incorporating the terms of their NAESB Base Contracts. The Transaction Confirmation dated July 7, 2011, and incorporated NAESB Base Contract between Antero and SJRG (the "SJRG Contract"), is attached as Exhibit A. The Transaction Confirmation dated July 7, 2011, and incorporated NAESB Base Contract between Antero and SJG (the "SJG Contract"), is attached as Exhibit B. The SJRG Contract and the SJG Contract are collectively referred to as the "Contracts." The only difference in the terms between the SJRG Contract and the SJG Contract is the volumes of gas to be sold by Antero. The other terms are identical, including the pricing terms.

**B. Under the Contracts, the price was based on the Columbia Appalachia index.**

19. Under the Contracts, the Delivery Period is "October 1, 2011 thru October 31, 2019." Under the Contracts, the Delivery Point is "Various Antero production meters into the Columbia lines 1983 and 1740 in Doddridge County, West Virginia."

20. Antero and the SJ Defendants agreed to base their price on benchmark index prices published by Platts McGraw Hill Financial ("Platts"), which is contemplated in the NAESB form contract. Under the Contracts, the price term was defined as:

> For first of month priced gas, Inside Ferc Columbia Appalachia less 12 cents, and for daily priced gas, Gas Daily Columbia Appalachia less 14 cents. In the event that Seller fails to timely nominate gas as daily priced or first of the month priced as set forth above, all gas for the applicable month shall be deemed to be priced at Inside FERC Columbia Appalachia less 12 cents.

21. The Columbia Appalachia index is one of numerous natural gas pricing indices published by Platts and is widely used within the natural gas industry for a variety of purposes, including incorporation into contracts between buyers and sellers. The discount from the Columbia Appalachia index (14 cents or 12 cents) was intended to compensate the SJ Defendants for their obligation to receive and assume the transportation obligation of the purchased gas from the delivery point under the Contracts.

**C.   After nearly three years of performance, the SJ Defendants improperly sought to re-negotiate the price term in the Contracts.**

22. Beginning in October 2011, the SJ Defendants purchased natural gas from Antero under the Contracts. Each month, Antero delivered gas to the SJ Defendants at the designated delivery point and invoiced the SJ Defendants from Denver, Colorado based on the applicable volumes and Columbia Appalachia index price for that month. In turn, the SJ Defendants received gas at the designated delivery point and paid Antero in Colorado based on the monthly invoices calculated using the Columbia Appalachia Index.

23. After years of performance under the Contracts, the SJ Defendants became unsatisfied with the contract price. In the fall of 2014, the SJ Defendants demanded that Antero re-negotiate the Contracts' price term, and threatened to terminate the Contracts if Antero did not re-negotiate. Antero disagreed that there was any basis to re-negotiate the Contracts' price term and declined to change the price.

24. Rather than terminating the Contracts (which they had no basis to do), beginning in the invoice month of October 2014, the SJ Defendants improperly and unilaterally applied a different Platts price index, the TETCO Inside FERC price ("TETCO"), to the gas sold under the Contracts, and short paid Antero. Beginning in the

invoice month of January 2015, the SJ Defendants applied Platts' Columbia Appalachia (Non-IPP) index to the volumes of gas sold under the Contracts.  This index was also unilaterally chosen by the SJ Defendants without any contractual basis.  The SJ Defendants purported to justify their short pay on an alleged change in methodology by Platts for the calculation of the Columbia Appalachia index.  Specifically, the SJ Defendants claimed that Platts began excluding gas trades made outside the Interruptible Paper Pool ("IPP") location beginning in April 2014 when they had previously been including such trades in calculating the price of the Columbia Appalachia index.  The SJ Defendants claimed that this alleged change amounted to a market disruption event under the terms of the NAESB Base Contract that necessitated renegotiation of the price term.

**D.   The First Lawsuit Establishes that the SJ Defendants Are Contractually Obligated to Pay the Price Based on the Columbia Appalachia Index**

25.   Antero investigated the SJ Defendants' claims and discovered no material change in the formula or the method for Platts' determination of the Columbia Appalachia index, as required under the Contracts to re-open price negotiations.  Antero initiated the First Lawsuit against the SJ Defendants to establish that the SJ Defendants were required to pay the invoice price based on the Columbia Appalachia index.

26.   The parties tried their case to a jury during May 2017.  The SJ Defendants argued that there had been a market disruption event under Section 14(c) and 14(e) of the NAESB Base Contract and that this alleged market disruption meant that: (i) the SJ Defendants were justified in paying the invoices based on the index they selected; and, (ii) Antero had breached the contract by failing to renegotiate the price.  Antero argued

that no market disruption event occurred, and that the SJ Defendants breached the contracts by failing to pay the price calculated using the Columbia Appalachia index price. Antero also argued that, even if a market disruption event had occurred, the SJ Defendants breached the Contracts by failing to follow the express remedial provisions of the market disruption event clause in selecting a new price index.

27. On May 8, 2017, after a five-day jury trial, the jury returned a unanimous verdict in Antero's favor, finding that South Jersey breached its contracts and awarding Antero $60,215,413. *See* Verdict Form, attached as <u>Exhibit C</u>. The $60,215,413 judgment represented the underpayment damages sustained by Antero (including contractually required interest) from October 2014 through March 2017 because of South Jersey's re-calculation of Antero's invoices using a different and lower index price than the price provided in the parties' Contracts. The jury also found that Antero had not breached the Contracts, rejecting South Jersey's claim that a market disruption event (as defined in the Contracts) permitted South Jersey to remit monthly payments based on this different and lower index price. On July 21, 2017, the Court approved the jury's verdict and entered Final Judgment. *See* Final Judgment attached as <u>Exhibit D</u>.

**D. Despite the Jury Verdict and Final Judgment, the SJ Defendants Continue to Short Pay Antero.**

28. In disregard of the First Lawsuit and its *res judicata* effect, the SJ Defendants continue to breach the Contracts by refusing to pay the contract price based on the Columbia Appalachia index. Every month since March 2017 (the last month for which the jury awarded Antero damages), the SJ Defendants have improperly recalculated the invoices based on an index different than the Columbia Appalachia index

and paid a lower price. By substituting a unilaterally chosen index price, the SJ Defendants have also continued to ignore the remedial provisions of Section 14 of the NAESB Base Contract.

29. The SJ Defendants intend to continue to short-pay Antero using a different index, despite the Final Judgment confirming their obligation to pay the contract price based on the Columbia Appalachia index.

30. From April 2017 through November 2017, Antero has been underpaid by more than $12.8 million, excluding interest.

31. The Contracts' term continues through October 2019. Antero has incurred and will continue to incur millions of dollars in damages because of SJ Defendants' past and future short pays.

## FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT

32. Antero incorporates by reference the foregoing paragraphs.

33. The Contracts are legally binding and enforceable agreements.

34. Under the plain language of the Contracts, and the Final Judgment of this Court in the First Lawsuit, the price for natural gas is to be calculated based on the Columbia Appalachia index.

35. In every month since the Final Judgment in the First Lawsuit, the SJ Defendants have short paid Antero by re-calculating Antero's monthly invoices based on a different and lower price index. The SJ Defendants have indicated that they will continue to refuse to pay Antero's future monthly invoices based on the Columbia Appalachia index. The SJ Defendants' actions are a breach of the Contracts.

36. The SJ Defendants have continued to breach the contracts by substituting a unilaterally chosen lower price index and ignoring the remedial provisions of Section 14 of the NAESB Base Contract.

37. As a direct and proximate cause of the SJ Defendants' actions, Antero has incurred millions of dollars of damages. Antero will continue to suffer damages as the SJ Defendants continue to short pay Antero by calculating and paying monthly invoices using a lower index price than required under the Contracts.

## SECOND CLAIM FOR RELIEF - DECLARATORY JUDGMENT

38. Antero incorporates by reference the foregoing paragraphs.

39. The Court has the power to provide declaratory relief because an actual controversy exists, and the Court has subject matter jurisdiction over this action. 28 U.S.C. § 2201(a).

40. An actual and substantial dispute exists between Antero and the SJ Defendants as to whether the Columbia Appalachia price index remains the basis for calculating the price of natural gas under the Contracts.

41. There is no factual or legal basis to set aside the price term in the Contracts or to ignore the Final Judgment in the First Lawsuit between the same parties which resolved this issue in favor of Antero.

42. Antero seeks a declaration that the SJ Defendants must pay Antero for gas delivered based on the Columbia Appalachia index price specified in the Contracts.

43. All conditions precedent have been performed or have occurred and/or have been waived.

## PRAYER

WHEREFORE, Antero asks that it recover on its breach of contract claims against the SJ Defendants in an amount in excess of the jurisdictional limits of the Court to be determined at trial, that the Court declare that the Columbia Appalachia price index is the basis for calculating the price of natural gas under the Contracts, that Antero recover its attorneys' fees, pre-and post-judgment interest, that it recover its costs, and that it receive all other relief, at law or in equity, to which it is justly entitled.

Dated: December 21, 2017

Respectfully submitted,

*/s/ James R. Henderson*
Michael J. Gallagher
James R. Henderson
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: 303 892 9400
Facsimile: 303 893 1379
Email: Mike.Gallagher@dgslaw.com
      Jim.Henderson@dgslaw.com

James D. Thompson III
Phillip B. Dye, Jr.
Kathleen B. Spangler
Nicholas N. Shum
Page S. Robinson
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Telephone: 713 758 4502
Facsimile: 713 615 5765
Email: jthompson@velaw.com
      pdye@velaw.com
      kspangler@velaw.com
      nshum@velaw.com
      probinson@velaw.com

*Counsel for Plaintiff Antero Resources Corporation*